**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Marie Aracri, *et al*.,

        Plaintiffs,

    v.                     Case No. 1:10cv253

Dillard's, Inc.,                Judge Michael R. Barrett

        Defendant.

## <u>ORDER</u>

This matter is before the Court upon Plaintiffs' Motion for Conditional Collective Action Certification and Leave to Conduct Discovery Prior to Rule 26(f) Conference. (Doc. 6.) Defendant Dillard's, Inc. has filed a Motion to Dismiss Class/Collective Action Allegations, Stay Proceedings and Compel Arbitration. (Doc. 12.)

## I.   <u>BACKGROUND</u>

Plaintiffs Marie Aracri and Laura Grady claim that Defendant Dillard's, Inc. violated the Fair Labor Standards Act ("FLSA") and Ohio state law by failing to pay overtime wages. Plaintiffs seek to proceed as a class action under Federal Rule of Civil Procedure 23 and a collective action under section 216(b) of the FLSA.

Plaintiffs were employed by Dillard's as associates in its department stores. (Doc. 1, ¶¶ 6, 7.) Plaintiffs entered into an arbitration agreement with Dillard's ("Arbitration Agreement"). (Id., ¶ 10.) The Arbitration Agreement requires arbitration of all claims alleging "violation(s) of any common law of constitutional provision, federal, state, county, municipal or other governmental statute, ordinance, regulation or public policy relating to . . . minimum wage and overtime." (Id., Ex. 2.) Under the Arbitration Agreement, such

claims are subject to Dillard's Rules of Arbitration.

Plaintiffs move for an order conditionally allowing Plaintiffs to proceed collectively pursuant to Section 216(b) of the FLSA.  Dillard's moves for dismissal of all class and collective action allegations.  Dillard's also seeks a stay in this matter and an order compelling Plaintiffs to pursue their individual claims in arbitration.

## II.  ANALYSIS

### A.  Motion to Dismiss, Stay Proceedings and Compel Arbitration

Dillard's argues that Plaintiffs' class allegations must be dismissed because Dillard's Rules of Arbitration do not permit class-based proceedings.  Dillard's argues that Plaintiffs must instead proceed with their individual claims in arbitration.  In response, Plaintiff Aracri argues that she did not knowingly and voluntarily waive her right to litigate her claims in this Court.[1]  Both Plaintiffs argue that their claims are not subject to arbitration because the Arbitration Agreement is unconscionable; and even if the Arbitration Agreement is enforceable, Dillard's waived its right to compel arbitration.

### 1.  Federal Arbitration Act

The Federal Arbitration Act ("FAA") requires a federal court to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement, *see* 9 U.S.C. § 4. The FAA provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see*

---

[1]Plaintiff Grady does not make this same argument

*also* Ohio Rev. Code § 2711.01 (a written arbitration provision "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.").  Therefore, "generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).

The Supreme Court has recognized the federal public policy favoring arbitration, and stated that courts must vigorously enforce arbitration clauses. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  However, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972 (6th Cir. 2007), *citing AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).  "Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008), *quoting Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003).  The parties do not dispute that Plaintiffs' FLSA, state-law wage and breach of contract claims fall within the substantive scope of the Arbitration Agreement. Instead, the parties raise other arguments regarding arbitrability.

3

2.    **Aracri's waiver**

Ordinary contract principles apply in determining the validity of a binding arbitration agreement that includes a waiver of a right to sue in court.  *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc).  To determine whether a waiver has been knowingly and voluntarily executed, a court must consider: (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.  *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003).

The Sixth Circuit has found a valid waiver where the plaintiff was a highly educated managerial employee who was capable of understanding the terms of the agreement; the waiver was plain; and the employee had three days in which to withdraw her consent to the agreement, which advised applicants that they may wish to consult an attorney before signing it.  *Morrison*, 317 F.3d at 668.

In contrast, the Sixth Circuit found that a waiver was not knowing and voluntary where employees were hired on the spot after a brief interview; the hiring manager hurriedly presented them with various documents that they were instructed to sign in order to be considered for the job; managers placed an 'x' in every spot an applicant was required to sign, and told applicants to sign every 'x' without any explanation; and employees were not given an opportunity to revoke their waiver.  *Walker*, 400 F.3d at 381-82.

4

According to Aracri, Dillard's hired her on the same day that she filled out an application and was interviewed. (Doc. 17-1, Marie Aracri Aff., ¶ 2.) Along with the other new-hire paperwork, Dillard's presented Aracri with the "Agreement to Arbitrate Certain Claims." (Id., ¶3.) At the top of the document, there is the following notice in capital letters:

> IMPORTANT NOTICE: THIS AGREEMENT WAIVES YOUR RIGHT TO A JURY TRIAL AND TO PURSUE LITIGATION IN COURT. READ IT CAREFULLY BEFORE SIGNING.

(Doc. 14-2, Nanette Savage Decl., Ex. 2.)

Araci was told that the Arbitration Agreement was something that was needed in case she ever had a "problem." (Marie Aracri Aff., ¶ 4.) Aracri was not provided with Dillard's "Rules of Arbitration" at the time of her hire. (Id., ¶ 5.) During her first week of work, a co-worker told Aracri that she would need to sign an electronic version of the Arbitration Agreement in addition to the paper version. (Id., ¶ 11.) Aracri later learned that the Rules of Arbitration were available on the company's internal website. (Id., ¶ 6.)

Aracri was born in Italy and lived there until the age of six. (Id., ¶ 7) Aracri speaks English, but it is not her first language. (Id.) Aracri graduated from high school, but does not have a college degree or any other post-secondary degrees. (Id., at ¶ 8.) Aracri was never informed that she could consult with an attorney before she signed the Arbitration Agreement. (Id., ¶ 10.)

The Court finds that there is nothing about Aracri's experience, background, and education which would suggest that her waiver was not knowing or voluntary. Aracri has completed high school. *Cf. Walker*, 400 F.3d at 381 (finding waiver was not valid where plaintiffs had not completed high school). Moreover, the waiver language found in the Arbitration Agreement is plain, and there is no indication that Aracri did not understand the

5

language because of her education or any difficulty with English.  The Court notes that the Arbitration Agreement itself cautions that the Agreement should be read carefully before signing.  This cautionary language is conspicuously located at the top of the document and is written in capital letters.

At the time of her hire, Aracri was presented with the Arbitration Agreement as a stand-alone document.  There is no indication that the document was presented in a hurried fashion or that Aracri was prevented from learning about the document.  In fact, Aracri asked about the document, and was told that it was necessary in case there was a "problem."  This statement is not misleading, and indicates that Aracri had an opportunity to consider the document before signing it.

Moreover, Aracri was presented with an electronic version of the Arbitration Agreement during her first week of employment.  After being presented with the document a second time, Aracri again signed the Arbitration Agreement and continued her employment with Dillard's.  *See Dantz v. American Apple Group, LLC.*, 2005 WL 465253, *5 (6th Cir. Mar. 1, 2005) (unpublished) (under Ohio law continued employment sufficient consideration to support binding arbitration agreement).

Based on the foregoing, the Court finds that Aracri's waiver was knowing and voluntary.

### 3.   Class arbitration

Dillard's argues the Arbitration Agreement does not provide for class or collective arbitration, and therefore Plaintiffs' class and collective allegations must be dismissed. Dillard's relies on the Supreme Court's decision in *Stolt-Nielsen S.A. v. Animal Feeds Int'l*

*Corp.*, which held that an arbitration panel exceeded its powers by imposing class arbitration on parties whose contractual arbitration agreement was silent on the issue. 130 S.Ct. 1758, 1768-70 (2010).

Dillard's fails to make two critical distinctions between this case and the one before the Court in *Stolt-Nielsen*. First, in *Stolt-Nielsen*, the parties had stipulated that the agreement was silent as to whether it permitted or precluded class arbitration.[2] In this case, there is no corresponding agreement between the parties that the Arbitration Agreement and Dillard's Rules of Arbitration are silent as to whether class arbitration is permitted.

Second, the case in *Stolt-Nielsen* was in a different procedural posture. There, an arbitration panel had issued a partial final award concluding that the arbitration clause allowed for class arbitration, and stayed the proceeding to allow the parties to seek judicial review. Stolt-Nielsen then filed an application to vacate the award in federal district court. This distinction becomes critical because the Supreme Court has indicated that when claims are submitted to arbitration, the question of whether class arbitration is forbidden is initially a question of contract interpretation and should be decided in the first instance by an arbitrator. *See Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 447 (2003) (plurality opinion); *see also id.* at 455 (Stevens, J., concurring in the judgment and dissenting in part) (noting that the question "[a]rguably . . . should have been made in the

---

[2]When the parties were before the arbitration panel, counsel for AnimalFeeds told the panel that the term "silent" did not simply mean that the clause made no express reference to class arbitration. 130 S.Ct.1766  Instead, it meant that "[a]ll the parties agree that when a contract is silent on an issue there's been no agreement that has been reached on that issue." *Id.*

first instance by the arbitrator").  Therefore, it is not for this Court, but for an arbitrator to decide whether class arbitration is forbidden under the Arbitration Agreement and Dillard's Rules of Arbitration.

However, there is a separate but related question of whether, assuming the contractual language is interpreted to provide for a class action waiver, that waiver is unconscionable.  Plaintiffs argue that it is unconscionable to require employees to pursue their claims individually in arbitration, rather than proceeding collectively, as contemplated by Section 216(b) of the FSLA.[3]

As an initial matter, statutory claims may be the subject of an arbitration agreement, including claims under the FLSA.  *See Walker*, 400 F.3d at 377; *Floss v. Ryan's Family Steak Houses, Inc*., 211 F.3d 306, 313 (6th Cir. 2000) (finding claim under FLSA arbitrable but concluding agreement to arbitrate lacked consideration); *Johnson v. Long John Silver's Restaurants, Inc*., 320 F.Supp.2d 656, 661 (M.D.Tenn. 2004) (finding FLSA claim subject to arbitration); *Winn v. v. Tenet Healthcare Corp*., 2011 WL 294407, *2 & n.2 (W.D.Tenn. Jan. 27, 2011) (slip op.) (finding FLSA claim subject to arbitration and collecting cases reaching same conclusion).

However, even though the FAA can be invoked to enforce the arbitration of federal statutory claims, the arbitral forum must "allow for the effective vindication" of a plaintiff's statutory claim.  *Raasch v. NCR Corp*., 254 F.Supp.2d 847, 854 (S.D.Ohio 2003), *quoting Floss*, 211 F.3d at 313.  Plaintiffs argue that in most cases the only practical way the FLSA

---

[3]This section of the FLSA provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

8

can be enforced is to proceed collectively because individual claims tend to involve small monetary remedies.

When presented with the same argument, another district court recently rejected Plaintiffs' position.  *See Winn*, 2011 WL 294407, *9.  The court noted that the Supreme Court has rejected the contention that a class action waiver in an arbitration agreement is unenforceable merely because the relevant statute allows for class or collective actions. *Id.*, *citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991).[4]  The court concluded that even in the absence of a collective action, the arbitration provision was enforceable:

> The Supreme Court has held that FLSA rights, such as the right to basic statutory minimum wage, the right to overtime, wages, and the right to liquidated damages, "may not be abridged by contract or otherwise waived." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981). However, the "mere fact that class actions are mentioned within § 216(b) does not create a 'right' for a plaintiff to bring a class action."  *Brown v. Sears Holding Mgmt. Corp.*, No. 09 C 2203, 2009 WL 2514173, at *3 (N.D.Ill. Aug. 17, 2009) (concluding that "it is the underlying availability of remedies provided in the FLSA, such as back wages, liquidated damages, etc., that constitute rights that cannot be abridged by private agreement, rather than the dispute resolution mechanisms that can be employed to determine legal entitlement to those remedies").  The Court finds that none of Plaintiff's potential FLSA remedies are jeopardized if she is deemed to have released her ability to proceed in a class action.

*Id.* at *10.  This Court finds the above reasoning persuasive and adopts the same conclusion.  Accordingly, the Court concludes that the Arbitration Agreement does not prevent Plaintiffs from vindicating their statutory rights under the FLSA.

---

[4]In *Gilmer*, the plaintiff argued that he should not be compelled to arbitrate his claims under the Age Discrimination in Employment Act ("ADEA") because he would be unable to pursue class or collective treatment in arbitration. 500 U.S. at 32.  The Supreme Court rejected this argument, explaining that statutory claims may be the subject of arbitration agreements because an arbitration agreement only determines the choice of forum.

4.    **Dillard's waiver**

Finally, Plaintiffs argue that even if the Arbitration Agreement is enforceable, Dillard's has waived its right to compel arbitration by failing to respond to Plaintiffs' initial class and collective arbitration request through the American Arbitration Association (AAA).

According to Plaintiffs, on March 17, 2010 Plaintiffs submitted their Notice of Intent to Arbitrate along with a $100 filing fee to the AAA.  (Doc. 1, Ex. 4.)  On April 5, 2010, the AAA indicated it could not continue to arbitrate the claim because Dillard's had not paid its share of the arbitration fee.  (Id., Ex. 5.)  The AAA set a deadline of April 12, 2010 to receive the additional fees.  (Id.)  On April 6 and 14, 2010, Plaintiffs counsel wrote Dillard's regarding the remainder of the fee and notified Dillard's that Plaintiffs' intended to file this lawsuit.  (Id., Ex. 6.)  Plaintiffs contend that Dillard's did not respond and did not pay any fee to the AAA before Plaintiffs filed their complaint on April 21, 2010.  Plaintiffs argue that Dillard's delay prejudiced the claims of potentially hundreds of "opt-in" plaintiffs because each day represents an additional day of lost wages in the form of unpaid overtime pay.

Dillard's responds with two contentions.  First, Dillard's contends that consistent with the AAA's Supplementary Rules for Class Action Arbitration, Plaintiffs were responsible for paying the remainder of the $3,350 class arbitration fee.  Second, Dillard's contends that it did respond to the AAA, and notified the AAA that class arbitration was not permitted under Dillard's Rules of Arbitration.  Dillard's states that it offered to pay the remainder of the fee due for an individual arbitration.

Courts, rather than arbitrators, presumptively resolve claims that a party waived its right to arbitration through inconsistent conduct.  *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008).   The Sixth Circuit has made it clear that "[t]here is a

10

strong presumption in favor of arbitration, and . . . waiver of the right to arbitration is not to be lightly inferred." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355-56 (6th Cir. 2003); *see also Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). However, a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010), *quoting O.J. Distrib.*, 340 F.3d at 356. Conduct which constitutes a waiver typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

For example, in *General Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, the defendant did not assert any right to arbitrate until seventeen months after receiving actual notice of the lawsuit, when it objected to an entry of default judgment against it. 289 F.3d 434, 438 (6th Cir. 2002). The Sixth Circuit concluded that the defendant waived any right to arbitrate because it "remained idle while [the plaintiff] incurred the costs associated with this action." *Id*.

In *O.J. Distributing Inc. v. Hornell Brewing Co.*, the Sixth Circuit found that the defendant waived its right to arbitrate by engaging with the plaintiff in thirteen months of pre-litigation negotiations and two months of negotiations after litigation was filed, during all of which the defendant denied the existence of an arbitration agreement. 340 F.3d at 358. The court also found that there was actual prejudice because the agreement included

11

a provision that the plaintiff was required to initiate arbitration within 180 days of the occurrence giving rise to its claims.  *Id.*

In contrast, in *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, the Sixth Circuit found there was no waiver where the defendant in a pre-litigation letter discussing dispute resolution declined "at [that] point" to agree to arbitration, but then immediately invoked the arbitration clause upon the commencement of litigation by filing a motion to compel arbitration and stay the proceedings.  350 F.3d 568, 573-74 (6th Cir. 2003).

The Court notes that after Plaintiffs submitted their notice of intent to arbitrate, Dillard's responded by raising a challenge to class arbitration.  Approximately one month later, Plaintiffs filed this action, and Dillard's responded to the Complaint by filing the instant Motion to Dismiss Class/Collective Action Allegations, Stay Proceedings and Compel Arbitration.  The Court finds that the brief delay caused by Dillard's challenge to the amount of AAA fees due or the availability of class arbitration does not rise to the level of conduct found to constitute a waiver by the Sixth Circuit.  Moreover, the only prejudice identified by Plaintiffs is not actual prejudice, but merely speculative.  Therefore, the Court concludes Dillard's did not waive its right to arbitration under the Arbitration Agreement. Accordingly, the Court finds that Plaintiffs' claims are subject to arbitration.

### 5.    Stay or dismissal

The Sixth Circuit has indicated that dismissal is appropriate where the issues raised are subject to arbitration.  *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues

12

raised in the district court must be submitted to arbitration."), *quoting Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

The Court finds that in this instance, staying the action and retaining jurisdiction would serve no purpose. Accordingly, Defendant's Motion to Dismiss is GRANTED IN PART as to dismissal of this case, and DENIED IN PART as to the alternative relief of staying the case pending arbitration.

**B.** **Plaintiffs' Motion for Conditional Collective Action Certification**

Based on the conclusion reached above, the Court finds that it is unnecessary to address the issues raised in Plaintiffs' Motion regarding certification to proceed collectively and discovery. Accordingly, Plaintiffs' Motion is DENIED as MOOT.

**III.** **CONCLUSION**

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiffs' Motion for Conditional Collective Action Certification and Leave to Conduct Discovery Prior to Rule 26(f) Conference (Doc. 6.) **is DENIED as MOOT**; and

2. Defendant Dillard's, Inc.'s Motion to Dismiss Class/Collective Action Allegations, Stay Proceedings and Compel Arbitration (Doc. 12.) is **GRANTED in PART and DENIED in PART**;

   a. Defendant's Motion is GRANTED as to dismissal of this case, and DENIED as to the alternative relief of staying the case pending arbitration;

3. Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE** and the parties are directed to proceed to arbitration under the terms of the Agreement to Arbitrate; and

4.       This matter is **CLOSED** and **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

                 *___/s/ Michael R. Barrett_____*
                 Michael R. Barrett
                 United States District Judge